[Crim. No. 26286. Second Dist., Div. Three. Mar. 28, 1975.]

In re KENNETH JAMES WELLS on Habeas Corpus.

**COUNSEL**

F. Elaine Easley for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline, Howard J. Schwab and Donald F. Roeschke, Deputy Attorneys General, for Respondent.

## OPINION

COBEY, J.—We have before us in this habeas corpus proceeding the question of whether the recidivist provision of Penal Code section 647a[1] (child molestation) violates the cruel or unusual punishment clause of the California Constitution. (Cal. Const., art. I, § 6.) This section states that every person who "annoys or molests"[2] a child under the age of 18 is guilty of a simple misdemeanor and can be punished by no more than a six-month jail sentence or a $500 fine. For a second or subsequent offense, however, or upon proof of a prior conviction under section 288 (lewd and lascivious acts upon the person of a child under the age of 14), section 647a prescribes an indeterminate prison term of one year to life.[3] In other words, here, as in *In re Lynch,* the statute requires the "enormous leap" from an ordinary misdemeanor to a life-maximum felony either for the repetition of the offense or for its commission by one who has previously committed a more serious sex offense—namely, a violation of section 288.[4] (8 Cal.3d at p. 434 [105 Cal.Rptr. 217, 503 P.2d 921].)

---

[1]This section reads as follows: "Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable upon first conviction by a fine not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment and is punishable upon the second and each subsequent conviction or upon the first conviction after a previous conviction under Section 288 of this code by imprisonment in the state prison for not less than one year."

All sections referred to in this opinion are in the Penal Code unless otherwise noted.

[2]Our Supreme Court has construed these words as follows: "The words 'annoy' and 'molest' are synonymously used (Words and Phrases, perm. ed., vol. 27, 'molest'); they generally refer to conduct designed 'to disturb or irritate, esp. by continued or repeated acts' or 'to offend' (Webster's New Internat. Dict., 2d ed.); and as used in this statute, they ordinarily relate to 'offenses against children, [with] a connotation of abnormal sexual motivation on the part of the offender.' [Citation omitted.] Ordinarily, the annoyance or molestation which is forbidden is 'not concerned with the state of mind of the child' but it is 'the objectionable acts of defendant which constitute the offense,' and if his conduct is 'so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would "annoy or molest" within the purview of' the statute." [Citation omitted.] (*People* v. *Carskaddon,* 49 Cal.2d 423, 426 [318 P.2d 4].)

[3]The statute provides for a term of "not less than one year." This means a maximum term of life. (Pen. Code, § 671; *In re Lynch,* 8 Cal.3d 410, 419 [105 Cal.Rptr. 217, 503 P.2d 921].)

Here, as in *Lynch,* petitioner does not contend that the indeterminate sentence law is invalid on its face or that an indeterminate sentence of any length whatever constitutes cruel or unusual punishment. (*Id.* at p. 415.)

[4]This section has since 1937 (Stats. 1937, ch. 545, § 1, p. 1562) read: "Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person

In *Lynch* our Supreme Court held that the identical leap required under the indecent exposure statute for repetition of that offense constituted cruel or unusual punishment. The court, however, expressly reserved opinion on the question before us,[5] and we must decide whether the fundamental holding of that case should now be extended to petitioner's situation. For reasons hereafter stated, we conclude that the *Lynch* holding should be so extended, and that petitioner is entitled to be released from parole.

## FACTS

On November 28, 1960, petitioner, Kenneth James Wells, was convicted of violating section 647a with a prior section 288 conviction, and was sentenced to state prison for the term prescribed by law. The judgment was entered upon a guilty plea and it specifically noted that the victims were under the age of 10.

From the preliminary hearing transcript it appears that the charge to which petitioner pled guilty arose out of the following circumstances. On October 31, 1960, around 8:30 p.m., two young girls were out trick-or-treating when petitioner offered them a ride. The girls got into petitioner's car; he promised them a dollar if they "didn't tell anybody;" he then drove about four blocks to a dark, dead-end street, stopped his car and said to the girls: "Let me see your panties." The girls thereupon jumped out of petitioner's car and ran away crying.

Following his conviction for the above-described offense, petitioner entered state prison and remained there until he was paroled sometime in 1970. In 1973 he returned to prison after he had served six months in the county jail for another offense. On August 28, 1974, the Adult Authority fixed his sentence for the section 647a offense at 20 years and granted him parole effective December 16, 1974. Petitioner remains on parole at the present time.

---

or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

[5] 8 Cal.3d at page 434, footnote 22. As noted later, the court did not have before it the alternative situation calling for the imposition of the recidivist penalty under section 314, namely, a violation of section 288 followed by a violation of section 314. We have that situation here except that the second offense is a violation of section 647a.

Our Supreme Court did observe that the Legislature drastically increased the penalties under both sections 314 and 647a as part of the same 1952 legislation. (Stats. 1953, First Ex. Sess. 1952, ch. 23, §§ 4 and 5, pp. 381-382.)

## DISCUSSION

### Standing

■ The Attorney General contends that petitioner is precluded from attacking the punishment prescribed by section 647a because he has had his sentence fixed at 20 years and is no longer incarcerated.

This contention lacks merit. Petitioner remains in constructive custody while he is on parole. (*In re Sturm,* 11 Cal.3d 258, 265 [113 Cal.Rptr. 361, 521 P.2d 97].) Moreover, under section 3020 the Adult Authority can, for good cause, redetermine petitioner's sentence at any time before his final discharge. (*Lynch, supra,* 8 Cal.3d at p. 417.) For this reason, among others, our Supreme Court stated in *Lynch:* "[W]hen a defendant under an indeterminate sentence challenges that sentence as cruel or unusual punishment in violation of the California Constitution, the test is whether the maximum term of imprisonment permitted by the statute punishing his offense exceeds the constitutional limit, *regardless of whether a lesser term may be fixed in his particular case by the Adult Authority.*" (*Id.,* at p. 419.) (Italics added; footnote omitted.)

### Merits

As noted earlier, the question before us essentially is whether the fundamental holding of *Lynch* should be extended to the situation before us. There are two ways in which petitioner's situation can be distinguished from the situation in *Lynch:* first, there are important differences between the offenses at issue in these two cases. As we shall see, indecent exposure is a significantly less serious offense than child molestation. Second, the increased penalty imposed on petitioner was not the result of a repetition of the identical offense, as it was in *Lynch.* (*Id.,* at pp. 413-414.) Instead, it was imposed because petitioner had previously committed a more serious sex offense—namely, a violation of section 288 (lewd and lascivious acts upon the person of a child under the age of 14)—and this prior offense itself carried a life-maximum term upon its first commission.[6]

■ Nevertheless, for reasons hereafter stated, we conclude that *Lynch* should be extended to reduce the penalty imposed by the recidivist portion of section 647a.

---

[6]See footnote 4. The constitutionality of the life-maximum term imposed by section 288 was upheld by Division One of this district in *People* v. *Kingston,* 44 Cal.App.3d 629, 633-636 [118 Cal.Rptr. 896].)

## A. *The Lynch Test*

In *Lynch* our Supreme Court adopted disproportionality as the constitutional standard by which statutes imposing punishment are to be measured, and pointed to three techniques to be used in analyzing particular penalties to determine whether they are in fact disproportionate. (8 Cal.3d at p. 425 et seq.) This "three-prong test" requires us: (a) to consider the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society; (b) to compare the penalty at issue with the punishment this state prescribes for more serious offenses; and (c) to compare the penalty at issue with the punishment other jurisdictions prescribe for the identical offense.

## B. *The Nature of the Offense and/or the Offender*

We begin by examining the seriousness of the offense defined by section 647a and comparing it with the seriousness of the offense at issue in *Lynch*.

"Annoying or molesting a child" does not appear to have been a separate common law crime and was not proscribed as such under the Penal Code of 1872. It was first added to the code in 1929, at which time a penalty of $500 or six months in the county jail was imposed on any person who "annoys or molests any school child."[7] In 1947, this section was modified and subdivided, the class of victims was expanded to include all children,[8] and a recidivist provision was added to the section. Under the latter provision, a term of imprisonment "not exceeding five years" was imposed for second or subsequent offenses.[9] In 1949, the notorious *Stroble* incident[10] and the public outcry that it engendered led then-Governor Earl Warren to proclaim the First Extraordinary Session of 1949 to enact stricter legislation to curb sex offenders. One result of that session was the extension of the recidivist provision enacted two years earlier to include first offenders, like petitioner, with prior convictions under section 288.[11] Similarly, the *McCracken* incident[12] led Governor Warren three years later to convene the First Extraordinary

---

[7]Statutes 1929, chapter 376, section 1, page 697.

[8]A 1950 amendment restricted the class of victims to children under the age of 18. (Stats. 1951, ch. 1200, § 1, p. 3084.)

[9]Statutes 1947, chapter 730, section 1, page 1783.

[10]*People* v. *Stroble,* 36 Cal.2d 615 [226 P.2d 330].

[11]Statutes 1950, First Extraordinary Session 1949, chapter 14, section 1, pages 28-29.

[12]*People* v. *McCracken,* 39 Cal.2d 336 [246 P.2d 913].

Session of 1952, which resulted in the enactment of the life-maximum terms for recidivists under the indecent exposure statute and under the statute now before us.[13] (See generally *Recent Decisions,* 6 Loyola L. A. L.Rev. 416, 422-423.)

Thus, we do not have quite the clear-cut pattern our Supreme Court pointed to in *Lynch*—namely, a low-key approach to the offense over a long period of time followed by a sudden, extraordinary jump in the penalty enacted in response to public outcry over one particular incident. Nevertheless, much the same thing happened here. Consequently, we think the penalty now before us may fairly be characterized as yet another product of the intense public concern over sex offenses that arose in this state a quarter of a century ago.

On the other hand, it is difficult to characterize child molestation as a mere embarassment or "social nuisance," as our Supreme Court found indecent exposure to be. (*Lynch, supra,* 8 Cal.3d at p. 430.) True, no physical aggression or contact occurred here—as would be the case, for instance, under section 288 which proscribes lewd and lascivious acts *upon the person* of a child under the age of 14. (See *People* v. *Kingston, supra,* 44 Cal.App.3d at p. 635.) But it certainly cannot be said that individuals who "annoy or molest" children do so primarily to shock or surprise them and have no desire for further contact with their victims; whereas this generally is the case with exhibitionists. (See Mohr, Turner & Jerry, Pedophilia and Exhibitionism (1964) p. 19.) More importantly, the child molester's victim necessarily is a young child who, presumably, is susceptible to far greater psychological damage than the adult victim of the exhibitionist.[14]

Furthermore, at least some observers consider child molesters, in general, to be more dangerous, harder to rehabilitate, less able to understand or accept their problems, and more inclined to deny their guilt than the average felon is. (See generally, Duffy & Hirshberg, Sex and Crime (1965) pp. 119-121.)[15] And in the case of the 647a offender with a prior section 288 conviction, like petitioner, there

---

[13]See footnote 5, *supra.*

[14]Of course, the effect on the child depends on a number of factors—primarily the child's emotional status and his security in his environment. (Mohr, Turner & Jerry, *op. cit.,* pp. 35-37.)

[15]Other, perhaps better qualified, observers take a position somewhat contrary to that stated in the text. Their position is that the rate of recidivism for sexual offenses is generally low. They further note that heterosexual pedophilia has a recidivism rate half that of exhibitionism. Nevertheless, even these observers concede that certain well

necessarily has been some past tendency to do more than merely "annoy or molest" the victim, and to engage instead in actual physical contact of a sexual nature. Indeed, petitioner in this case in all probability intended such contact to occur and was prevented from achieving his goal only by the escape of his intended victims. He might well have been prosecuted for an attempt to commit a much more serious sex offense—namely, a violation of section 288.[16]

For these reasons, we find it difficult to describe the life-maximum term as so disproportionate that it "shocks the conscience" and "offends fundamental notions of human dignity" (8 Cal.3d at p. 424) solely on the basis of the nature of the offense and/or the offender. True, the life-maximum term is quite harsh, but this is the punishment petitioner received for the commission of his first offense, violation of section 288, and it was the prior commission of that offense that made him subject to the identical punishment for the commission of the lesser offense of violation of section 647a. Furthermore, great deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses. On this first prong of the *Lynch* test the case is at best extremely close. Therefore, we turn to the remaining two prongs.

C.  *A Comparison of the Penalty With the Punishment California Imposes for More Serious Offenses.*

Petitioner's case is significantly strengthened by a comparison of the recidivist penalty section 647a imposes with punishments for other crimes in California which are undeniably of far greater seriousness. For example, here, as in *Lynch*, it is extremely difficult to believe that petitioner's most recent offense represents a greater threat to society than the crimes of voluntary manslaughter (§ 193, up to 15 years); assault with intent to commit murder (§ 217, 1-14 years); kidnaping (§ 208, 1-25 years); mayhem (§ 204, up to 14 years); assault with intent to commit mayhem or robbery (§ 220, 1-20 years); assault with caustic chemicals,

---

defined offender groups contain higher percentages of chronic offenders. (Mohr, Turner & Jerry, *op. cit.,* pp. 82-85.)

The term pedophilia (child molesting) is used by psychiatrists to refer generally to sexual activity involving a sexually immature object. Obviously this term covers a wide range of criminal offenses reflecting varying degrees of social dangerousness. (See generally, Glueck, *Pedophilia,* in Sexual Behavior and the Law (Slovenko edit. 1965), pp. 539-562; Frisbie, Another Look at Sex Offenders in California (1969).)

[16]In California the maximum punishment under section 664, subdivision 1, for such an attempt is 20 years.

with intent to injure or disfigure (§ 244, 1-14 years); and assault on a peace officer or fireman engaged in the performance of his duties (§ 241, up to 2 years, or up to 1 year in jail; see also § 243).

The same is true when we consider, as the *Lynch* court did, a number of crimes which, although somewhat more indirectly, can be extremely dangerous to life and limb, such as: arson (§ 447a, 2-20 years); burglary by torch or explosives (§ 464, 10-40 years); wrecking a vehicle of a common carrier, causing bodily harm (§ 219.1, 1-14 years); shooting at an inhabited dwelling (§ 246, 1-5 years, or up to 1 year in jail); poisoning food or drink with the intent to injure a human being (§ 347, 1-10 years); and drunk driving causing bodily injury (Veh. Code, § 23101, up to 5 years, or up to 1 year in jail).

Nor does proportionality appear if we consider only the laws regulating sexual activities, such as assault with intent to commit rape or sodomy (§ 220, 1-20 years); forcible abduction for purposes of defilement (§ 265, 2-14 years) or prostitution (§ 266a, up to 5 years and/or fine up to $1,000); purchasing or selling a woman for prostitution (§§ 266e and 266f, up to 5 years); and unlawful sexual intercourse (§§ 261.5, 264, up to 50 years, or up to 1 year in jail).

Likewise, if we look to statutes designed to protect children, we find it difficult to believe, for example, that petitioner's most recent offense presents a greater danger than the act of one who wilfully inflicts "unjustifiable physical pain" on a child "under circumstances or conditions likely to produce great bodily harm or death;" or who wilfully inflicts on a child "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition." Yet, as the *Lynch* court noted (*id.,* at p. 432), the penalty for either of such brutalities (§§ 273a and 273d, up to 10 years, or up to 1 year in jail) is far less than a life-maximum sentence. And if a major purpose of section 647a is to guard children against assaults upon their sensibilities, there is no possible justification for the great disparity between petitioner's punishment and the simple misdemeanor penalty attached by section 273g to the conduct of one who "in the presence of any child indulges in any degrading, lewd, immoral or vicious habits or practices."

Finally, and perhaps most tellingly, we may compare the section before us with other California statutes which prescribe enhanced punishment for recidivism. First, we note that in all but three of the

above-listed dangerous crimes involving personal violence, sexual assaults, or harm to children, there is no statutory provision increasing the penalty for recidivism. In other words, as our Supreme Court pointed out in *Lynch,* "a man may repeatedly commit manslaughter or mayhem, assault with intent to commit rape or sodomy, child-beating or felony drunk driving, and still be subject each time to a lighter penalty than [petitioner received here]." (8 Cal.3d at p. 434.)

Second, we note that of all the statutes which increase the punishment in the case of a second offense, only section 647a and the statute at least partially struck down in *Lynch* compel the enormous single leap from an ordinary misdemeanor to a life-maximum felony. In each of the remaining statutes, as the court there stated: "there is a reasonable relationship between the punishments for the first and subsequent offenses. If the crime is of a minor nature, its enhanced penalty remains proportionately light; if the crime is more serious, its original penalty was proportionately heavy. The theory in each instance is that whatever the response appropriate to the factor of recidivism, the judgment of the Legislature as to the gravity of the act itself should remain relatively constant." (*Id.,* at pp. 434-435; fns. omitted.) This view is firmly expressed in the recommendation of the American Bar Association Advisory Committee on Sentencing and Review that in structuring habitual offender legislation: "Any increased term which can be imposed because of prior criminality should be related in severity to the sentence otherwise provided for the *new* offense." (A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (1967) p. 22, par. 3.3(a)(i).) (Italics added.) The committee further explained that when a sentence no longer bears any "reasonable relationship" to the event which triggered its possibility, "[t]he major thrust of the proceeding has shifted from the offense to the status of the offender. A proceeding which can result in . . . a long sentence ought to assume the burden of depending initially and primarily on the criteria which justify it, rather than employ the vehicle of a relatively minor felony to approach the same end indirectly." (*Id.,* at p. 139.) The views of this distinguished committee, which were quoted with approval in *Lynch* (8 Cal.3d at p. 435), are particularly important here because they indicate that the enhanced penalty imposed on petitioner ought to have borne a "reasonable relationship" to his *present* offense and not to his prior offense, which was far more serious than the present one. The anomaly of the punishment before us is that the escalation in the recidivist penalty is triggered by the commission of an offense much less serious than the prior one.

Third, we note that the increased punishment provided by section 647a is far more severe than that of other recidivist statutes penalizing conduct that is indisputably more serious, such as the punishment imposed on one who twice commits a felony while armed with a deadly weapon such as a gun, knife, or club (§ 12022, par. 2, 10-15 years, consecutive); or twice threatens public officials with bodily injury (§ 71, up to 5 years); or twice forges prescriptions for narcotic drugs (Health & Saf. Code, § 11368, up to 10 years); or twice possesses heroin or other narcotics (Health & Saf. Code, § 11350, 5-20 years).

Thus, we conclude that here, as in *Lynch,* it is abundantly clear that the penalty for recidivism imposed on petitioner is disproportionate when compared with the punishment California prescribes for more serious offenses.

### D. *A Comparison of the Penalty With the Punishment Other Jurisdictions Impose for the Same Offense.*

Petitioner's case is further strengthened by a comparison of the penalty prescribed by section 647a with the penalties prescribed under the penal codes of our 49 sister states and the District of Columbia. At the outset, it is interesting to note that our survey—the results of which are summarized in an appendix—uncovered few statutes that are directly comparable to California's. Section 647a punishes conduct that need not involve actual sexual contact with the child. Only six other jurisdictions have this type of statute.[17] In most jurisdictions, the offense described in section 647a would be punished, if at all, as an *attempt* to commit a more serious sexual offense—e.g., attempting to commit a lewd or lascivious act upon, or to take indecent liberties with, the body of a child.[18]

It is also interesting to note that in the broad category of indecent sexual behavior (excluding rape) the statutes of only a very few jurisdictions contain recidivist provisions. The maximum punishment for a repeat offense is fifteen years in one state;[19] ten years in three states;[20]

---

[17]Most comparable to section 647a are the statutes of Alabama, Arkansas, Georgia, Missouri, Nevada, and Oklahoma—all of which are referred to in the appendix.

[18]Of course, petitioner undoubtedly could be punished for "disorderly conduct" in these jurisdictions even if he did not entertain the requisite specific intent to complete a serious sex offense and, therefore, could not be convicted of an attempt as suggested earlier in this opinion.

[19]The state is North Dakota (Indecent Liberties with a Child).

[20]The states are: Nebraska (Lewd Conduct); North Carolina (Indecent Liberties); and Alabama (Indecent Molestation).

six years in one state;[21] and five years in three states.[22] Only two states impose a life-maximum sentence for a repeat offense, and these states do so only for the more serious crime of indecent assault.[23]

Finally, of even greater significance is the fact that of the six jurisdictions that have statutes directly comparable to California's,[24] only three provide for an increased penalty for a repeat offense: Alabama—maximum ten years; Arkansas—maximum five years; and Nevada—maximum six years. Thus, *no other jurisdiction would impose a life-maximum sentence under the circumstances now before us.*

We end our survey by comparing the treatment of the offense proscribed under section 647a with its treatment under the proposed California Criminal Code, which was recently re-introduced in the Legislature. (Sen. Bill No. 565, 1975 Reg. Sess.) Section 9402 of the new code would provide that any person who "sexually annoys" a minor is guilty of a "misdemeanor of the first degree," punishable by a county jail sentence not exceeding one year (§ 1303) and/or a fine not exceeding $1,000 (§ 1304, subd. (b)(1)). There is no provision for increasing the punishment upon a second or subsequent conviction, or upon its commission by one who had previously been convicted for sexually abusing a child (§ 9401)—the equivalent of present section 288. The proposed legislation, in short, would return California approximately to its posture during the pre-1947 period.[25]

---

[21]The state is Nevada (Annoying or Molesting a Child; No Sexual Contact Required).

[22]The states are: West Virginia (Child Molestation; Sexual Contact Required); Arkansas (Annoying or Molesting a Child; No Sexual Contact Required); and Massachusetts (Unnatural and Lascivious Acts with a Child).

[23]The statutes referred to are those of Massachusetts (Ch. 265, § 13B) and Pennsylvania.

[24]See footnote 17.

[25]No offense directly comparable to section 647a is contained in either of the two model codes examined in *Lynch.* (8 Cal.3d at pp. 436-437.) Under the Model Penal Code of the American Law Institute (Proposed Official Draft 1962) the closest offense appears to be "sexual assault" (§ 213.4), a misdemeanor punishable by a maximum of one year's imprisonment and a fine up to $1,000. (§§ 6.03, 6.08.) Under the proposed Federal Criminal Code prepared by the National Commission on Reform of Federal Criminal Laws (Study Draft 1970) there is no offense that even remotely resembles that defined in section 647a. But a revised version of the code now before the Congress (S.1 94th Cong., 1st Sess.) contains a section proscribing "unlawful sexual contact" (§ 1645), a class B misdemeanor under circumstances analogous to those present here (see §§ 1645, 1643, subd. (c)(1)), and the penalty for a class B misdemeanor is a jail term of up to six months. (§ 2301, subd. (b)(7).)

E.  *Conclusion.*

Thus, we conclude that the penalty prescribed by section 647a is clearly disproportionate under at least two of the three prongs of the *Lynch* test, and is arguably so under the remaining prong as well. In effect, what we have concluded is that California could rationally decide that its children are entitled to extraordinary protection and could constitutionally impose a severe penalty for all offenses directed at child victims—particularly those involving violence. But California has not done so. Instead, it has singled out one particular offense for a grossly disproportionate recidivist sanction—one that, moreover, is far out of line with the sanction imposed by other jurisdictions. Under these circumstances, we do not hesitate to hold that the life-maximum sentence provided for in section 647a "shocks the conscience" and "offends fundamental notions of human dignity" (8 Cal.3d at p. 424), and therefore constitutes cruel or unusual punishment.

*Relief*

The question of relief remains. Under *Leaming* v. *Municipal Court,* 12 Cal.3d 813 [117 Cal.Rptr. 657, 528 P.2d 745], the penalty for petitioner's offense now is the five-year maximum term of imprisonment provided for in section 18 of the Penal Code.[26] Since petitioner has now served more than five years, he is entitled to be freed from all custody, actual or constructive.

DISPOSITION

The writ is granted and petitioner is ordered discharged from custody.

Ford, P. J., and Allport, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 11, 1975. Clark, J., was of the opinion that the petition should be granted.

---

[26]That is also what section 647a provided before it was amended in 1952 (see text at fns. 9, 11, *supra*), so the severability question addressed in *Leaming* would, in any event, be a moot one.